UNITED STATES OF AMERICA

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WEYERHAEUSER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>FIREMAN'S FUND INSURANCE COMPANY,<br><br>Defendant<br><br>and<br><br>FIREMAN'S FUND INSURANCE COMPANY,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>GENERAL INSURANCE COMPANY OF AMERICA; NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE, WISCONSIN, and OLD REPUBLIC INSURANCE COMPANY,<br><br>Third-Party Defendants. | Case No. C06-1189MJP<br><br>ORDER GRANTING WEYERHAEUSER'S CROSS-MOTION FOR SUMMARY JUDGMENT REGARDING ALLOCATION TO FRONTING POLICIES AND DENYING FIREMAN'S FUND'S CROSS-MOTION FOR SUMMARY JUDGMENT REGARDING INSURANCE POLICIES ISSUED BY THIRD PARTY DEFENDANTS |

This matter comes before the Court on cross-motions for partial summary judgment on the issue of whether Fireman's Fund, one of four insurance companies that provided general commercial liability coverage to Weyerhaeuser during the at-issue claims period, may seek equitable contribution from the other three insurers. Fireman's Fund labels its motion "Cross Motion for Partial Summary Judgment Re: Insurance Policies Issued by Third Party Defendants"

ORDER — 1

1  (Dkt. No. 72) and Weyerhaeuser labels its motion "Amended Motion for Partial Summary
2  Judgment Regarding Allocation to Fronting Policies." (Dkt. Nos. 81, 89.)  Having considered the
3  motions and responses, all documents submitted in support thereof and the record herein, and
4  having heard oral argument on the issues, the Court GRANTS Weyerhaeuser's cross-motion and
5  DENIES Fireman's Fund's cross-motion.

## Background

7  This case arises from twenty-seven claims asserted against Weyerhaeuser alleging liability
8  for bodily injury.  The claims relate to asbestos exposures that spanned a number of years.  Four
9  different insurers collected premiums from Weyerhaeuser for liability coverage over this period.
10 Fireman's Fund issued policies from 1954 to 1978; General Insurance issued policies from 1978
11 to 1985; Northwestern National issued policies from 1985 to 1986; and Old Republic issued
12 policies from 1986 to 1989. (Dkt. No. 73, McDougall Decl. ¶ 5 & Exs. A-C.)  Although the
13 precise language in each policy varies, all four policies provide coverage for "all sums" (up to a
14 certain limit) that Weyerhaeuser becomes obligated to pay as damages because of bodily or
15 personal injury. (Id.)

16 The policies differ in their limits, deductibles, and coverage.  Those differences are
17 irrelevant to the issues in these motions — here, the parties focus on "side agreements" that
18 Weyerhaeuser made with Northwestern National, General Insurance, and Old Republic that limit
19 those insurers' indemnification and defense responsibilities.  For example, even though the
20 General Insurance policies provide $1 million limits for each bodily injury occurrence from 1978
21 to 1985, in a separate contract, Weyerhaeuser agreed to indemnify Safeco (who owns the General
22 Insurance policies) "from all loss, cost and expense" incurred by Safeco under the issued policy.
23 (McDougall Decl., Ex. D.)  Similarly, Weyerhaeuser agreed to a deductible that equaled the
24 policy limits of its Northwestern National policy and it agreed to indemnify and reimburse
25 Northwestern National for any loss paid under the policy. (Id., Exs. B & E.)  Weyerhaeuser had
26 the same arrangement with its insurer from 1986-89, Old Republic. (Id., Exs. C & F.)  The effect
27

ORDER — 2

of these "side agreements" — or, as Weyerhaeuser calls them, "fronting policies" — is that Weyerhaeuser, not its insurer, actually pays for all losses under the policies.[1] Nevertheless, Weyerhaeuser paid a premium for all of these policies and the "fronting policies" make clear that the insurers will indemnify Weyerhaeuser if Weyerhaeuser becomes insolvent.

Weyerhaeuser argues that even though it technically purchased insurance policies for the 1978-89 period, these "fronting policies" provide no actual insurance benefit, rendering Weyerhaeuser effectively self-insured or uninsured during that time. Fireman's Fund argues that Weyerhaeuser was insured during that time period. Because the asbestos-related claims made against Weyerhaeuser spanned several policy periods, under Washington law, all insurers during those periods are jointly and severally liable for the claims. If, as Fireman's Fund argues, Weyerhaeuser was insured, Fireman's Fund may seek recompense from the other insurers. If, however, Weyerhaeuser was not insured during the 1978-1989 years, Fireman's Fund must absorb the entire cost of the claims, even for those years for which it did not provide insurance.

**Discussion**

**I.     Summary Judgment Standard**

This issue comes before the Court on cross-motions for summary judgment. A motion for summary judgment should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

**II.    Nature of Fronting Policies**

The parties dispute the nature of "fronting policies." Washington courts have never addressed these types of policies. As explained in the literature, and by a few courts, fronting policies are a form of self-insurance:

---

[1] Fireman's Fund suggested at oral argument that there were some periods of time in which the "side agreements" or deductible arrangements were not in effect and that therefore the insurers were fully liable under their main insurance agreements during those periods. Although some of the subsequent deductible arrangements were signed after commencement of the underlying policies, the side agreements appear to be effective for the entirety of the policy period. Fireman's Fund has not pointed the Court's attention to any contrary language in the individual policies.

ORDER — 3

> 'Fronting policies' are one step removed from true self-insurance. 'Fronting' refers to the issuance of an insurance policy under which the insured is left to administer all claims and agrees to reimburse the insurer for all settlements or judgments paid. . . . Such policies usually are used to satisfy state financial responsibility laws by guaranteeing to third parties that their claims against the insured will be paid. Thus, the insurer essentially functions as a surety relative to the insured's ability to pay covered third-party claims.

Mark W. Flory & Angela Lui Walsh, Know Thy Self-Insurance (And Thy Primary and Excess Insurance), 36 Tort & Ins. L. J. 1005 (2001); see also Douglas R. Richmond, Issues and Problems in "Other Insurance," Multiple Insurance, and Self-Insurance, 22 Pepp. L. Rev. 1373, 1449 (1995). Some commentators and jurists have suggested that fronting policies involve no risk transfer. See Richmond, supra, at 1449 ("Fronting policies do not indemnify the insured . . . ."); Flory & Walsh, supra, at *2 ("Fronting policies do not indemnify the insured, as they usually are issued with a deductible or SIR equal to the amount of the policy limits and with policy language relieving the insurer of any defense obligation."); Playtex FP, Inc. v. Columbia Cas. Co., 609 A.2d 1087, at *9 (Super. Ct. Del. 1991) ("Fronting policies have no risk transfer associated with them.").

At least one state supreme court has challenged the presumption that fronting policies are not "insurance":

> We disagree with the premise [that] there is no transfer of risk in such policies. In a fronting policy, the insurer functions purely as a surety for the insured's ability to pay claims, and the benefit extends only to third parties in situations in which the policy holder is unable to pay a liability owed to a third party. Thus, Old Republic [(the insurer)] has assumed the risk — which it presumably found acceptable based on Penske's [(the insured's)] net worth and financial capacity — that it will have to pay claims if Penske becomes insolvent.

Croft v. Old Republic Ins. Co., 618 S.E.2d 909, 915 (S.C. 2005) (internal quotation marks and citations omitted). Like the policies in Croft, the fronting policies here do involve a transfer of risk from the insured to the insurer — the risk that, should the insured become insolvent, the insurer will provide coverage for certain types of claims.

### III.     Joint and Several Liability

The parties do not dispute the law in Washington governing continuous damage claims.

ORDER — 4

Washington has adopted the continuous trigger rule for insurance coverage in cases involving undiscovered, progressively worsening conditions causing injury or damage. Thus, when an insured, who is insured by multiple insurers, is responsible for damages that occurred over several policy periods, every policy in force throughout the injury-causing process is triggered and the insurers are jointly and severally liable for the entire amount, minus deductibles, of the loss. Gruol Constr. Co. v. Ins. Co. of N. Am., 11 Wn. App. 632, 637 (1974) (holding that burden of apportionment, between insured and insurers, is on the insurers, and that absent a showing of apportionment, joint and several liability is proper); see also Am. Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co., 134 Wn.2d 413, 424 & n.4 (1998). But where coverage is triggered in more than one policy period and the insured is not indemnified for some of the periods, an insurer whose policy is triggered may not allocate some of the loss to the insured. B&L Trucking, 134 Wn.2d at 429. Washington's method of apportionment differs from other jurisdictions that use a "pro rata" allocation method that allows for apportionment between an insurer and its insured. See e.g. Sec. Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co., 826 A.2d 107, 121 (Conn. 2003) (adopting pro rata approach to allocation of defense costs in long latency loss claims that implicate multiple insurance policies and holding that duty to defend does not extend to periods of self-insurance).

Although not directly on point, B&L Trucking is instructive here. In B&L Trucking, the insured (Fjetland) was held liable for contamination of wetlands over a number of years. Id. at 419. Fjetland was insured throughout the claims period by multiple insurers. Id. Before trial on coverage issues with its insurers, several parties were dismissed, some settled, and the trial court ruled that one insurer's policy was not triggered; therefore, only one insurer — Northern — remained. Id. at 419-20. Northern argued that it was only liable for its pro rata share of the liability and that Fjetland was responsible for the rest of the policy periods. The Washington Supreme Court disagreed. The Court concluded that the language in the Northern policy was ambiguous — the policy stated that it covered "all sums" that the insured shall become legally

ORDER — 5

1  obligated to pay as damages because of bodily injury or property damage and did not include
2  language limiting Northern's responsibility to a pro rata payment based on the years for which it
3  provided coverage. Id. at 422, 428. The Court resolved the ambiguity in favor of the insured, as
4  is required under Washington law, see Am. Star Ins. Co. v. Grice, 121 Wn.2d 869, 878 (1993),
5  and held that once a policy is triggered, that policy remains on the risk for continuing damage and
6  the loss cannot be allocated back to the insured. Id. at 429. The B&L Trucking Court made very
7  clear that it was not dealing with an "uninsured" party — Fjetland had insurance for the non-
8  Northern years, but those policies were not triggered because of the occurrence and pollution
9  exclusion clauses in those policies. Id. at 427. Thus B&L Trucking instructs that Washington
10 courts may not apportion liability between an insured and an uninsured, or between an insurer and
11 an insured who cannot collect for other insured periods.

**IV.   May Fireman's Fund Seek Equitable Contribution from the Other Insurers?**

Weyerhaeuser argues that B&L Trucking prohibits Fireman's Fund from seeking recompense from the other three insurers here. The Court agrees. In B&L Trucking, the policy holder was not technically uninsured, but was rendered uninsured for certain policy periods by the fact that the B&L's intentionally harmful conduct triggered the other policies' exclusions. The Court concluded that the defendant insurer could not seek compensation from B&L for the excluded periods. Likewise, because Weyerhaeuser's fronting policies were only triggered in the case of insolvency, and because Weyerhaeuser was solvent during the at-issue period, the fronting policies left Weyerhaeuser effectively uninsured from 1978 to 1989. Moreover, the effect of the fronting policies is that any effort to seek recompense from the fronting insurers is, in actuality, an effort to seek recompense from the insured, Weyerhaeuser. B&L Trucking prohibits that result.

Weyerhaeuser's position also finds support in the California Supreme Court's decision in Aerojet-General Corp. v. Transport Indem. Co., 948 P.2d 909 (Cal. 1997), in which that court held that a jointly-and-severally liable insurer may not assert contribution claims against an insured who bought fronting policies for the period in question. In Aerojet, the plaintiff Aerojet had been

ORDER — 6

found liable for hazardous substance pollution in and around the American River in Sacramento. Over the period in question, Aerojet had been insured by multiple insurers; most relevant to the court's analysis, one of its insurers, INA, had issued Aerojet fronting policies similar to the ones issued here. Id. at 914.  The court rejected the other insurers' argument that they could seek recompense from Aerojet for the periods in which Aerojet had fronting policies. Id. at 929-930. The court characterized Aerojet as "uninsured" for the years in which it had the fronting policies and, based on standard joint and several liability analysis and the principle that an insurer may not seek equitable contribution from its insured, concluded that the other insurers could not seek contribution from Aerojet. Id.

Fireman's Fund's attempt to distinguish Aerojet is unavailing.  Fireman's Fund argues that Aerojet only addressed allocation of defense costs. Fireman's Fund suggests that the law treats defense and indemnity costs differently — specifically, Fireman's Fund argues that all insurers typically owe one hundred percent of defense costs, but only owe indemnity costs based on the "time of the risk."  Fireman's Fund's argument would be true in a jurisdiction that used a "pro rata" allocation. See e.g. Sec. Ins. Co. of Hartford, 826 A.2d at 121.  But in jurisdictions like California and Washington that apply joint and several liability, each insurer that contracts to pay "all sums" is fully liable for the entirety of the continuous loss. See Gruol, 11 Wn. App. at 637.

Fireman's Fund argues that Weyerhaeuser's position — under which an insured under a fronting policy is not responsible for its share of the loss — is unfair to the paying insurer, who is forced to pay for periods for which it received no premiums, and to the claimant, who runs the risk of unavailable monies if policy limits become exhausted.  But the Washington Supreme Court has held that there is nothing unfair about requiring an insurer who agreed to pay all sums arising out of an occurrence to pay for effectively uninsured periods. See B&L Trucking, 134 Wn.2d at 429-30 ("Northern contends the Court of Appeals' opinion violates principles of fairness and public policy because it provides a policyholder who purchases just one year of insurance the same protection as those who purchase insurance annually.  This argument is without merit.

ORDER — 7

Northern drafted the policy language [in which it agreed to pay "all sums" the insured becomes legally obligated to pay, up to the policy limits]; it cannot now argue its own drafting is unfair.").

Given the Washington Supreme Court's decision in B&L Trucking and the California Supreme Court's decision in Aerojet, the Court concludes that allocation between a regular insurer and a fronting policy insurer is akin to allocation between an insurer and an insured and that Washington law prohibits that result. It is fair and consistent with the terms of the Fireman's Fund policy to hold Fireman's Fund responsible for the full indemnity and defense costs (up to policy limits) because Fireman's Fund agreed to pay "all sums" Weyerhaeuser becomes liable to pay. The Court concludes that Fireman's Fund may not seek recompense from General Insurance, Northwestern Northern, or Old Republic.

**Conclusion**

The Court GRANTS Weyerhaeuser's cross-motion and DENIES Fireman's Fund's cross-motion. Washington law prohibits an insurer who has been held jointly-and-severally liable from seeking recompense from its insured for uninsured periods. Because an effort to seek recompense from the fronting policy insurers would in effect be an effort to seek recompense from Weyerhaeuser, Fireman's Fund may not seek recompense from General Insurance, Northwestern Northern, or Old Republic. Fireman's Fund's claims against those third-party-defendant insurers are DISMISSED.

The clerk is directed to send copies of this order to all counsel of record.

Dated this 16th day of December, 2007.

Marsha J. Pechman
United States District Judge

ORDER — 8