UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WEYERHAEUSER COMPANY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>FIREMAN'S FUND INSURANCE COMPANY,<br><br>　　　　Defendant<br><br>and<br><br>FIREMAN'S FUND INSURANCE COMPANY,<br><br>　　　　Third-Party Plaintiff,<br><br>　v.<br><br>GENERAL INSURANCE COMPANY OF AMERICA; NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE, WISCONSIN, and OLD REPUBLIC INSURANCE COMPANY,<br><br>　　　　Third-Party Defendants. | Case No. C06-1189MJP<br><br>ORDER GRANTING IN PART AND DENYING IN PART FIREMAN'S FUND'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING ALLOCATED LOSS ADJUSTMENT EXPENSE AND GRANTING IN PART AND DENYING IN PART WEYERHAEUSER'S CROSS-MOTION REGARDING APPLICATION OF DEDUCTIBLES UNDER 1958-67 POLICIES |

This matter comes before the Court on cross-motions for partial summary judgment. The parties dispute how the at-issue insurance policy deductibles apply to defense costs. Fireman's Fund labels its motion "Cross Motion for Partial Summary Judgment Re: Allocated Loss Adjustment Expense." (Dkt. No. 69.) Weyerhaeuser labels its motion "Cross-Motion for Partial Summary Judgment Re: Application of Deductibles Under 1958-1967 Policies." (Dkt. No. 79.)

ORDER — 1

On December 14, 2007, the Court heard oral argument on the motions and issued an oral ruling. Having considered all of the papers filed by the parties, and consistent with the Court's oral ruling, the Court GRANTS IN PART AND DENIES IN PART Weyerhaeuser's cross-motion and GRANTS IN PART AND DENIES IN PART Fireman's Fund's cross-motion.

## Background

This case arises from twenty-seven bodily injury claims asserted against Weyerhaeuser. The claims relate to asbestos exposures that spanned a number of years. The claims have all been resolved, either through settlement, judgment, or dismissal. Fireman's Fund issued liability coverage policies to Weyerhaeuser from 1954 to 1978. At issue in these cross-motions are the deductibles for the 1958-67 policy years.

The policies in force between 1958-62 contain functionally identical terms, (Cordell Decl. ¶¶ 5, 7), and provide in relevant part as follows:

> B. Deductible Amount.
>
> Under Coverages A, B, C and E, as respects the total amount of claims or judgments, as finally determined, which the company becomes obligated to pay on account of each occurrence or accident, the first named insured shall reimburse the company for amounts paid by the company on behalf of any insured to claimants to settle claims or satisfy judgments up to a limit of $25,000 with respect to each occurrence or accident, and: <u>as respects the total amount of allocated loss adjustment expense</u>, as finally determined, <u>which the company incurs in the **settlement of claims**</u>, the first named insured shall reimburse the company for such allocated loss adjustment expense, except that should the **value of the claim** <u>exceed $25,000</u> per occurrence or accident, <u>the amount of allocated loss adjustment expense charged to the first named insured shall be determined proportionally as $25,000 bears to the **total value of the claim**</u>.

(Cordell Decl., Ex. C.) (Emphasis added.) "Allocated loss adjustment expense" means defense costs:

> (b) The words "allocated loss adjustment expense" shall mean the actual payments made by the company in connection with each specific claim, excluding the cost of investigation and adjustment by fee adjusters or by salaried employees (other than amounts allocated as attorney's fees for claims and suits).

(Cordell Decl., Ex. E.) The 1962-67 policies re-worded the deductible definition, but generally provide the same coverage/deductible arrangement:

ORDER — 2

> B. Deductible Condition. With respect to the insurance afforded by the policy under Coverages A, B, C, and E, $25,000 and all allocated loss adjustment expense shall be deducted from the total amount of all sums which the insured shall become legally obligated to pay and allocated loss adjustment expenses as the result of one occurrence, and the Company shall be liable only for the difference between the applicable limit of liability as stated in the policy and the deductible amount applicable to each occurrence, subject to the following provisions:
>
> 1. The terms of the policy, including those with respect to notice of occurrence and the Company's right to investigate, negotiate and settle any claim or suit, apply irrespective of the application of the deductible amount.
>
> 2. The company may but shall not have any obligation to pay any part or all of [the] deductible amount to effect settlement of any claim, and upon notification of the action taken, the Named Insured shall reimburse the Company upon demand for such part of the deductible amount as has been paid by the Company.
>
> 3. The words <u>"allocated loss adjustment expenses" shall mean all paid expenses of the Company in connection with **claim settlements** which can be directly allocated to a particular claim</u>, other than salaries and traveling expenses of Company employees (except amounts allocated as attorney's fees for claims in suit), Company overhead, or fees paid to independent adjustors; except that <u>should the **value of the claim** exceed $25,000 per occurrence or accident, the amount of allocated loss adjustment expense shall be limited as $25,000 bears to the **total value of the claim**</u>.

(Cordell Decl., Ex. F.) (Emphasis added.)

The parties agree that under the above policy terms, a $25,000 deductible applies to indemnity coverage. The parties also agree that "allocated loss adjustment expense" means the typical costs associated with defending a claim. And the parties agree that although the policies read as if Fireman's Fund conducts the defense of underlying cases, pays defense costs in the first instance, and seeks reimbursement from Weyerhaeuser for deductible amounts, in actuality, in the 1980's, Weyerhaeuser and Fireman's Fund entered into an informal arrangement whereby Weyerhaeuser assumed control of defense and indemnity payments on asbestos bodily injury claims and would request reimbursement from Fireman's Fund where appropriate. (McDougall Decl. ¶ 3.)

The parties dispute how the deductibles apply to defense costs. Weyerhaeuser argues that

ORDER — 3

the policy provides: (1) a deductible applies to defense costs only when Weyerhaeuser settles the underlying case, rather than obtaining a judgment; (2) Fireman's Fund must cover Weyerhaeuser's defense costs when the sum of defense costs and settlement payment exceeds $25,000; and (3) when a deductible does apply to defense costs, Weyerhaeuser must pay a percentage of the defense costs equal to the deductible ($25,000) divided by the sum of the defense costs and settlement payment.  Fireman's Fund argues that (1) when Weyerhaeuser pays less than the deductible to resolve a claim (i.e., the indemnity amount is less than $25,000), Weyerhaeuser is responsible for all of the defense costs incurred, regardless of whether there was a settlement or judgment; and (2) when Weyerhaeuser pays more than the deductible to resolve a claim, Weyerhaeuser is responsible for the defense costs in the same proportion as the deductible bears to the amount paid to resolve the claim.

## Discussion

**I.     Standard**

These issues come before the Court on cross-motions for summary judgment.  A motion for summary judgment should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Under Washington law, construction of an insurance policy is a question of law: the courts consider the policy as a whole and give the policy "a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance" even if the purchaser is a large corporation with company counsel. Queen City Farms, Inc. v. Central Nat'l Ins. Co. of Omaha, 126 Wn.2d 50, 65-66 (1994).  "Undefined terms should be given their plain, ordinary, and popular meaning." Id.  In addition, where a policy term or clause is ambiguous (i.e., reasonably susceptible to two or more interpretations), and the ambiguity cannot be resolved with extrinsic evidence, it must be construed in favor of the insured. Weyerhaeuser Co. v. Aetna Cas. & Sur. Co., 123 Wn.2d 891, 897 (1994).

ORDER — 4

1  **II.    Must Weyerhaeuser contribute to defense costs only when it settles a claim, or is it responsible for a portion of defense costs regardless of how a claim is resolved?**
2

Weyerhaeuser argues that, under the 1958-67 policies, the deductible applies to defense costs only when Weyerhaeuser settles an underlying case and not when Weyerhaeuser obtains a judgment. Fireman's Fund argues that when Weyerhaeuser pays less than the deductible to resolve a claim, Weyerhaeuser is responsible for all of the defense costs incurred, regardless of whether the claim was resolved by settlement or judgment. The parties agree that resolution of this dispute turns on the Court's interpretation of the phrases "settlement of claims" and "claim settlements." Weyerhaeuser argues that "settlement of claims" or "claim settlements" means an agreement between the parties that resolves the underlying claims. Fireman's Fund argues that "settlement" has a broader meaning and includes any type of "resolution" or "disposition" of a claim, including both voluntary agreements and judgments.

The Court looks first to the plain meaning of the words. "Settlement" generally means a voluntary agreement made to resolve a dispute. See Black's Law Dictionary 1372 (6th ed. 1990) (defining "settlement" as "an agreement by which parties having disputed matters between them reach or ascertain what is coming from one to the other."); American Heritage Dictionary 1593 (4th ed. 2000) (defining "settle" as "[t]o decide (a lawsuit) by mutual agreement of the involved parties without court action"). "In legal parlance, [settlement] implies meeting of minds of parties to transaction or controversy...." Black's Law Dictionary 1372. The plain and ordinary meaning of "settlement of claims" is an agreement by which claims are resolved without court action.

Read in context, "settlement" cannot mean agreement <u>and</u> judgment. In the section that defines the deductible amount, the 1958-62 policies specifically distinguish between settling claims and satisfying judgments:

> the first named insured shall reimburse the company for amounts paid by the company on behalf of any insured to claimants <u>to settle claims or satisfy judgments</u> up to a limit of $25,000 with respect to each occurrence or accident, and: as respects the total amount of allocated loss adjustment expense, as finally determined, which the company incurs in the <u>settlement of claims</u> . . .

ORDER — 5

(Cordell Decl., Ex. C.) This section indicates that the drafters conceived of "settling claims" differently than "satisfying judgments" and knew how to draft language that distinguished between the two.

Fireman's Fund points out that elsewhere in the policy, the policy refers to payments made "voluntarily" "prior to trial court judgment." (McDougall Decl., Ex. B.) Fireman's Fund argues that "settlement of claims" must therefore mean something different than making a voluntary payment prior to trial court judgment. But the fact that Fireman's Fund used different words or phrases to refer to an agreement to resolve a claim does not mean that "settlement" is a broad term that includes both agreements and judgments.

Fireman's Fund also argues that the Court's focus should be on the broad definition of "allocated loss adjustment expense," which is not limited to defense costs for settlements. But the Court will not read the policy phrases in isolation — the 1958-62 policies state that the insured is responsible for a portion of the "allocated loss adjustment expense ... which the company incurs in the settlement of claims ...." (Cordell Decl., Ex. C.) And the 1962-67 policies restrict the application of any deductible to defense costs when the claims are settled by defining "allocated loss adjustment expenses" as "all paid expenses of the Company in connection with claim settlements." (Cordell Decl., Ex. F.) The policies should be read as a whole. See Queen City Farms, 126 Wn.2d at 65-66.

The plain language, read in context, indicates that "settlement of claims" means an agreement by which the claims are resolved without court action. Under that interpretation, Weyerhaeuser is responsible for some portion of the defense costs when a claim was resolved by agreement, and is not responsible for any of the defense costs when a claim was resolved by satisfying a judgment. Thus, the Court GRANTS Weyerhaeuser's cross-motion and DENIES Fireman's Fund's cross-motion on this issue, and concludes that under the 1958-67 policies, a

ORDER — 6

deductible applies to defense costs only when Weyerhaeuser resolves a claim by agreement.[1]

**III.   Does the application of the deductible to defense costs turn on the indemnity amount or the indemnity amount <u>plus</u> defense costs?  When the deductible does apply, how should Weyerhaeuser's portion of the defense costs be calculated?**

Fireman's Fund argues that Weyerhaeuser is responsible for all defense costs unless the indemnity amount paid exceeds $25,000,[2] and that for claims that exceed $25,000, Weyerhaeuser must pay a percentage of the defense costs equal to $25,000 divided by the indemnity amount. Weyerhaeuser argues that it is responsible for all defense costs for settlements unless the settlement amount <u>plus</u> defense costs exceeds $25,000, and that when the settlement amount plus defense costs exceeds $25,000, Weyerhaeuser must pay a percentage of the defense costs equal to $25,000 divided by the settlement amount plus defense costs.

The 1958-62 policies state that "should the **value of the claim** exceed $25,000 per occurrence or accident, the amount of allocated loss adjustment expense charged to the first named insured shall be determined proportionally as $25,000 bears to the **total value of the claim**." Similarly, the 1962-67 policies state that "should the **value of the claim** exceed $25,000 per occurrence or accident, the amount of allocated loss adjustment expense shall be limited as $25,000 bears to the **total value of the claim**." The parties agree that the Court's determination

---

[1] Because the Court does not find the policy language ambiguous, the Court need not consider Fireman's Fund's argument that extrinsic evidence supports its interpretation. Thus, the Court need not consider whether Weyerhaeuser's interpretation of the policy creates perverse incentives to avoid settlement or whether the subsequent agreements entered into between Firemen's Fund and Weyerhaeuser clarify the language of the earlier policies. And even if the Court considered it, the extrinsic evidence does not support Fireman's Fund's argument. First, it is not unreasonable to believe that an insurance company would encourage litigation rather than settlement of claims. Second, the subsequent policy language — which applies the deductible to defense costs regardless of whether the claims were resolved by settlement or judgment — suggests that Fireman's Fund was <u>changing</u> the policy language, not clarifying earlier language. Fireman's Fund presents no evidence suggesting that the parties intended the later language to clarify the earlier policy language.

[2] Fireman's Fund argues that the deductible applies to defense costs regardless of whether the underlying claim was resolved by settlement or judgment. But as discussed above, the policy language only requires Weyerhaeuser to pay for defense costs for claims that were resolved by settlement.

ORDER — 7

turns on the Court's interpretation of the phrase "value of the claim." Fireman's Fund argues that "value of the claim" means the amount paid to resolve the claim, i.e. the indemnity amount. Weyerhaeuser argues that "value of the claim" means the indemnity amount <u>plus</u> defense costs.

Weyerhaeuser's interpretation of the phrase is contrary to its plain meaning. Black's Law Dictionary defines "claim" (in pertinent part) as follows:

> To demand as one's own or as one's right; to assert; to urge; to insist. A cause of action. Means by or through which claimant obtains possession or enjoyment of privilege or thing. Demand for money or property as of right, *e.g.* insurance claim.

<u>Black's Law Dictionary</u> 247. "Claim" is also defined as "[a] demand for something as rightful or due ... [a] demand for payment in accordance with an insurance policy or other formal arrangement ... [t]he sum of money demanded." <u>American Heritage Dictionary</u> 341. These definitions all imply that the "claim" is defined by the one making the demand for it. In no way do these definitions suggest that the "claim" encompasses both the amount demanded <u>and</u> the amount spent in defending against that demand. A plain and ordinary reading of "claim" is the amount demanded by the injured party. The "value" of that claim is the dollar amount placed on that demand, either through settlement or judgment.

Weyerhaeuser's interpretation of the phrase "value of the claim" is also inconsistent with the context in which it is used. In the "deductible" section of the 1958-62 policies, the policies state that Weyerhaeuser must reimburse Fireman's Fund for "amounts paid by the company on behalf of any insured to claimants to settle claims or satisfy judgments up to a limit of $25,000 with respect to each occurrence or accident." (Cordell Decl., Ex. C.) Thus, the indemnity deductible is $25,000. The section then goes on to explain that in terms of defense costs, if the "value of the claim" exceeds $25,000, Fireman's Fund pays a portion of the defense costs. The fact that the policy identifies a $25,000 limit both for the "amounts paid ... to settle claims or satisfy judgments" and for the "value of the claim" suggests that "amounts paid ... to settle claims or satisfy judgments" and the "value of the claim" are the same.

Weyerhaeuser argues that when the drafters of the policies wanted to refer only to

ORDER — 8


indemnity liability, they did so with language that clearly excluded defense costs. Weyerhaeuser also points to the fact that the phrase "total value of the claim" immediately follows language that discusses both settlement or judgment liability and defense costs. Neither of these arguments is persuasive. Weyerhaeuser's argument itself reveals that the drafters used multiple phrases to refer to the same thing — indemnity liability. And the proximity of the phrases is irrelevant to the interpretation of their meaning — the section must be read as a whole as a reasonable person would read it. See Queen City Farms, 126 Wn.2d at 65-66.

The only reasonable interpretation of the policy language is an interpretation that makes Weyerhaeuser's portion of the defense costs mirror Weyerhaeuser's portion of the indemnity amount. If Weyerhaeuser pays twenty percent of the indemnity, it pays twenty percent of the defense costs. Under Weyerhaeuser's unreasonable interpretation, Weyerhaeuser would always pay a smaller percentage of defense costs than indemnity costs. Based on a plain and ordinary reading of "value of the claim" and read in the context of the surrounding policy language, the Court concludes that "value of the claim" means the indemnity amount, and does not include defense costs. Construing the policy in light of that interpretation, the Court GRANTS IN PART Fireman's Fund's cross-motion and DENIES IN PART Weyerhaeuser's cross-motion and concludes that (a) when Weyerhaeuser settles a claim and the indemnity amount is less than the deductible, Weyerhaeuser is responsible for all of the defense costs associated with that claim; and (b) when Weyerhaeuser settles a claim and the indemnity amount is more than the deductible, Weyerhaeuser is responsible for the defense costs incurred on that claim in the same proportion as the deductible bears to the indemnity amount paid to resolve the claim.[3]

**Conclusion**

The Court GRANTS IN PART AND DENIES IN PART Weyerhaeuser's cross-motion

---

[3] Because the Court does not find the policy language ambiguous, the Court need not consider Weyerhaeuser's argument that extrinsic evidence (the subsequent policy language) supports its interpretation.

ORDER — 9

1  and GRANTS IN PART AND DENIES IN PART Fireman's Fund's cross-motion. First, based
2  on the Court's interpretation of the phrase "settlement of claims," the Court concludes that under
3  the 1958-67 policies, a deductible applies to defense costs only when Weyerhaeuser resolves a
4  claim by agreement. A deductible does not apply to defense costs when a claim is resolved by
5  judgment. Second, based on the Court's interpretation of the phrase "value of a claim," the Court
6  concludes that when Weyerhaeuser settles a claim and the indemnity amount is less than the
7  deductible, Weyerhaeuser is responsible for all of the defense costs associated with that claim.
8  When Weyerhaeuser settles a claim and the indemnity amount is more than the deductible,
9  Weyerhaeuser is responsible for the defense costs incurred on that claim in the same proportion as
10 the deductible bears to the indemnity amount paid to resolve the claim.
11        The clerk is directed to send copies of this order to all counsel of record.
12        Dated this 18th day of December, 2007.

*[signature]*

Marsha J. Pechman
United States District Judge

ORDER — 10