UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WEYERHAEUSER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>FIREMAN'S FUND INSURANCE COMPANY,<br><br>Defendant<br><br>and<br><br>FIREMAN'S FUND INSURANCE COMPANY,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>GENERAL INSURANCE COMPANY OF AMERICA; NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE, WISCONSIN, and OLD REPUBLIC INSURANCE COMPANY,<br><br>Third-Party Defendants. | Case No. C06-1189MJP<br><br>ORDER GRANTING FIREMAN'S FUND'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING JOINT & SEVERAL LIABILITY AND DENYING WEYERHAEUSER'S AMENDED CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING TRIGGER OF COVERAGE |

This matter comes before the Court on cross-motions for partial summary judgment. Plaintiff Weyerhaeuser Company and Defendant Fireman's Fund Insurance Company dispute whether Weyerhaeuser can require Fireman's Fund to process asbestos liability claims under policies that pre-date the underlying claimants' alleged or actual exposure to Weyerhaeuser's products or premises. On December 18, 2007, the Court heard oral argument on the motions. Having considered Fireman's

ORDER — 1

Fund's "Cross-Motion for Partial Summary Judgment re: Joint & Several Liability" (Dkt. No. 74) and Weyerhaeuser's "Amended Cross-Motion for Partial Summary Judgment Re: Trigger of Coverage" (Dkt. No. 88-2), the parties' responses (Dkt. Nos. 93 & 96), all documents in support thereof and the record herein, the Court GRANTS Fireman's Fund's cross-motion and DENIES Weyerhaeuser's cross-motion.

**Background**

This case arises from twenty-seven claims asserted against Weyerhaeuser alleging liability for bodily injury. The claims relate to asbestos exposures that spanned a number of years. Fireman's Fund issued insurance policies from 1954 to 1978. The policies all provide the same bodily injury coverage — Fireman's Fund agreed to pay on behalf of Weyerhaeuser:

> all sums which the insured shall become obligated to pay by reason of the liability imposed upon the insured by law, or assumed by the insured under contract or agreement, for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained or alleged to have been sustained by any person or persons and arising out of the operations or the conduct of the business of the insured.[1]

(Dkt. No. 41, Am. Taylor Decl. ¶¶ 4-7.) In the mid-1980's, Weyerhaeuser and Fireman's Fund entered into an informal arrangement whereby Weyerhaeuser assumed control of defense and indemnity payments on asbestos bodily injury claims. (See McDougall J&S Decl. ¶ 4.)

The parties agree that upon submission of a request for reimbursement, the policies require Weyerhaeuser to select the policy year in which it is seeking coverage:

> If the insured carries other insurance with the company covering a loss also covered by this policy, other than underlying insurance of which the insurance afforded by this policy is in excess, <u>the insured must elect which policy shall apply and the company shall be liable under the policy so elected</u> and shall not be liable under any other policy.

(Am. Taylor Decl. ¶ 11; see also id. ¶ 12.) In April 2007, Weyerhaeuser informed Fireman's Fund that it wished to select the earliest policy year triggered for each claim. (McDougall J&S Decl. ¶ 5.)

---

[1] In the 1958-78 policy years, stylistic changes were made to this language. The changes did not affect the substance of the coverage provided.

ORDER — 2

The parties' dispute focuses on Fireman's Fund's indemnity coverage in two underlying cases.[2] In the "Anderson" case, Alex and Joan Anderson filed suit against Weyerhaeuser and other defendants in New York, alleging that Mr. Anderson's asbestos-related illness resulted from continuous exposure to asbestos throughout his employment as a carpenter. In his interrogatory answers, he stated that he was first exposed to asbestos in 1959. (Fewell Decl., Ex. G-8.) Weyerhaeuser did not start manufacturing fire doors until August of 1960. (McDougall J&S Decl., Ex. C.) The parties agree that Mr. Anderson testified in deposition that his first exposure to Weyerhaeuser's asbestos-containing fire doors occurred in 1965. (Fewell Decl., Exs. A-1 & G-9; McDougall Decl. ¶ 10.) Under New York law, a tortfeasor who is found to be more than fifty percent liable is jointly and severally liable for economic and non-economic damages. In re N.Y. City Asbestos Litig., 194 Misc.2d 214, 216 (N.Y. Misc. 2002); New York CPLR 1601(1). Weyerhaeuser settled the Anderson case on August 19, 2003. (Fewell Decl., Ex. E-3.) Fireman's Fund has rejected Weyerhaeuser's election to place the Anderson claim in the 1959-60 policy year, and seeks to place the claim in the 1965-66 policy year on the grounds that 1965 was the first year that Mr. Anderson was exposed to Weyerhaeuser's asbestos-containing fire doors. (Id., Exs. D-7, A-1.)

In the "Reed" case, Harold Reed filed suit against Weyerhaeuser and other defendants in Missouri, alleging that his exposure to asbestos from 1954 through 1999 resulted in his diagnosis of pleural mesothelioma. (Fewell Decl., Ex. G-10.) Mr. Reed testified in his deposition that he was first exposed to asbestos in 1954, but that his earliest exposure to Weyerhaeuser's asbestos-containing fire doors was sometime after 1965. (McDougall J&S Decl., Ex. E.) At the time of the Reed litigation, Missouri imposed joint and several liability on joint tortfeasors if a plaintiff was fault-free. Gramex Corp. v. Green Supply, 89 S.W.3d 432, 439-440 (Mo. 2002); Former Mo. Rev. Stat. § 537.067. Missouri also employs a contribution system that imposes liability on each tortfeasor proportionate

---

[2] Although the parties only identify two disputed indemnity payments in these motions, Fireman's Fund asks the Court to issue a legal ruling that addresses both defense and indemnity payments. The Court will only rule on the disputed issues before it. The Court will not rule on hypothetical issues.

ORDER — 3

1  to its negligence. Gramex, 89 S.W.3d at 440.  Weyerhaeuser settled the Reed case on June 4, 2003.
2  (Fewell Decl., Ex. E-1.)  Weyerhaeuser elected to place the claim for indemnity in the 1958-59 policy
3  year. (Id., Ex. D-7.)  Fireman's Fund's counsel indicated at oral argument that it would process the
4  indemnity portion of the Reed claim under the 1965-66 policy year.

The narrow issue presented in these cross-motions is whether Weyerhaeuser can require Fireman's Fund to process asbestos liability claims under policies that pre-date any alleged or actual exposure to Weyerhaeuser's asbestos products.

**Discussion**

**I.   Standard**

This issue comes before the Court on cross-motions for summary judgment.  A motion for summary judgment should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

**II.  Law Regarding Trigger of Coverage**

The Washington Supreme Court recently reviewed rules relating to an insurers' duty to defend and indemnify:

> The duty to defend arises at the time an action is first brought, and is based on the potential for liability.  An insurer has a duty to defend when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage. . . .  In contrast, the duty to indemnify hinges on the insured's actual liability to the claimant and actual coverage under the policy.  In sum, the duty to defend is triggered if the insurance policy conceivably covers the allegations in the complaint, whereas the duty to indemnify exists only if the policy actually covers the insured's liability.

Woo v. Fireman's Fund Ins. Co., 161 Wn.2d 43, 52-53 (2007) (internal quotation marks and citations omitted).  In terms of the Anderson claim, Fireman's Fund argues that the evidence indicated that there was no "actual liability" until 1965, when Mr. Anderson stated that he was first exposed to Weyerhaeuser's asbestos products.  Thus, based on Woo, Fireman's Fund argues that the earliest policy triggered by the Anderson claim was the policy for the 1965-66 policy year.  In terms of the Reed claim, Fireman's Fund argues that the evidence indicated that there

ORDER — 4

was no "actual liability" until at least 1965 and that therefore the earliest policy triggered by the Reed claim was the policy for the 1965-66 policy year.

Weyerhaeuser argues that the Court's analysis of which policy years were triggered should be guided by a 2000 Washington Supreme Court case — Weyerhaeuser Co. v. Commercial Union Ins. Co. ("Weyerhaeuser II"), 142 Wn.2d 654 (2000). In Weyerhaeuser II, the Washington Supreme Court considered whether a comprehensive general liability insurance policy covers property damage arising from the conduct of a third party at a time when the insured had no relation to or connection with the property. 142 Wn.2d at 678. In connection with 130 sites nationwide, Weyerhaeuser had voluntarily complied with federal and state efforts to enforce the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), the Washington's Model Toxics Control Act ("MTCA"), and other state laws aimed at cleaning up hazardous waste. See id. at 661; Weyerhaeuser Co. v. Aetna Cas. & Sur. Co. ("Weyerhaeuser I"), 123 Wn.2d 891, 895 (1994). Weyerhaeuser sued 34 insurance companies seeking a declaration of coverage. Weyerhaeuser II, 142 Wn.2d at 661. After all the other insurers settled, the remaining insurance company argued that its policy had not been triggered at all because Weyerhaeuser did not ship waste to the site-in-question until after the expiration of that insurer's policy. Id. at 676. The Court rejected the insurer's argument, holding that the policy covered property damage that occurred during the policy period even though the damage was not attributable to Weyerhaeuser's waste. Id. at 678-82. The Court reasoned that the plain language of the policy, the comprehensive nature of the policy, and the nature of the liability imposed by the environmental cleanup statutes mandated coverage for property damage arising from the conduct of a third party that occurred before Weyerhaeuser had any connection with the property. Id. at 682.

Weyerhaeuser argues that the Court should apply Weyerhaeuser II here and conclude that the Reed and Anderson claims triggered policy years prior to any exposure caused by Weyerhaeuser's products because (1) the Fireman's Fund policies here utilize similar language to the operative policy language in Weyerhaeuser II, and (2) New York and Missouri's imposition of

ORDER — 5

joint and several liability exposed Weyerhaeuser to liability and required it to pay for harm that occurred prior to any exposure to Weyerhaeuser's asbestos-containing products. Fireman's Fund argues that Weyerhaeuser II is distinguishable because (1) Fireman's Fund is not seeking to avoid coverage, (2) this case does not involve the same unique liability and public policy concerns, and (3) retroactive joint and several liability was not actually imposed on Weyerhaeuser here.[3]

The Court declines to extend the rule set forth in Weyerhaeuser II. Weyerhaeuser has not cited and the Court is not aware of any Washington decisions applying the Weyerhaeuser II rule outside the context of hazardous waste cleanup. The unique public policy considerations that compelled coverage in Weyerhaeuser II are not implicated here. The Weyerhaeuser II Court noted that the insurer's coverage obligation was supported by the unique "strict, joint and several, and retroactive" liability imposed by CERCLA and MTCA: "the nature of liability imposed under environmental cleanup acts requires coverage — notwithstanding the extent of the insured's fault — as such statutes impose liability, often without fault, on polluters in order to safeguard society in general." Weyerhaeuser II, 142 Wn.2d at 681 (internal quotation marks omitted). No such statutory regime or overarching policy goals exist in Missouri or New York's treatment of asbestos bodily injury claims; instead, alleged tortfeasors like Weyerhaeuser are subject to individual state tort claims brought by individual injured parties.

Moreover, Weyerhaeuser has not met its burden of showing that it was actually held jointly and severally liable for asbestos exposures that occurred before it manufactured its asbestos-containing products.[4] In Weyerhaeuser II, it was undisputed that Weyerhaeuser was liable for environmental damage caused prior to its connection with the site. Here, Weyerhaeuser

---

[3] Fireman's Fund does not argue that the operative policy language here differs from the language considered in Weyerhaeuser II.

[4] In Washington, where an insured settles an underlying claim and seeks to collect insurance proceeds, the insured needs to prove that the underlying claims are within the scope of policy coverage; the insured need not prove the actual claims against it. See Pub. Util. Dist. No. 1 of Klickitat County v. Int'l Ins. Co., 124 Wn.2d 789, 809 (1994).

ORDER — 6

asks this Court to presume that Weyerhaeuser was "obligated to pay by reason of the liability imposed" by law for damages arising during policy periods prior to its contact with Messrs. Anderson and Reed.

In terms of the Reed claim, Weyerhaeuser offers Mr. Reed's complaint against multiple defendants (including Weyerhaeuser) in which Mr. Reed alleged that he was exposed from 1954-1999 to asbestos during his work as a carpenter. (Fewell Decl., Ex. G-10.) Missouri imposes joint and several liability on joint tortfeasors where a plaintiff is fault free. See Gramex, 89 S.W.3d at 439-440; Former Mo. Rev. Stat. § 537.067. But Missouri also employs a contribution system that imposes liability on each tortfeasor proportionate to its negligence. Gramex, 89 S.W.3d at 440. Weyerhaeuser presents no evidence or argument suggesting that Mr. Reed's claims fell outside Missouri's contribution system.

In terms of the Anderson claim, Weyerhaeuser has not shown that it would have been subject to joint and several liability in New York. In New York, only tortfeasors who are more than fifty percent liable are subject to joint and several liability. In re N.Y. City Asbestos Litig., 194 Misc.2d at 216; New York CPLR 1601(1). Weyerhaeuser points to two pieces of evidence to support its argument: (1) an interrogatory response in which Mr. Anderson states that he worked for at least eight employers (not including Weyerhaeuser) from 1959-1980 and that he worked with asbestos-containing fire doors, wallboard, and joint compound (Fewell Decl., Ex. G-8); and (2) a portion of Mr. Anderson's deposition transcript in which Mr. Anderson stated that he hung "Wellwood or Weyerhaeuser" fire doors at the "Grace building." (Fewell Decl., Ex. G-9.) But Mr. Anderson also discussed hanging fire doors (made by unidentified manufacturers) at other buildings, and he discussed being exposed to asbestos through compound and sheetrock. (Id.) Given that Mr. Anderson alleged that he was exposed to asbestos through multiple products over a period of twenty years on various job sites working for various employers, the fact that he identified a single asbestos-containing Weyerhaeuser product at one job site does not indicate that Weyerhaeuser would have been held more than fifty percent liable for Mr. Anderson's entire

ORDER — 7

injury. The Court cannot assume that Weyerhaeuser was subject to joint and several liability under New York law.

**Conclusion**

Because the Court declines to apply the rule regarding trigger of coverage announced <u>Weyerhaeuser II</u> outside the context of hazardous waste cleanup, and because the evidence presented here does not show that Weyerhaeuser was subject to joint and several liability under Missouri or New York law, the Court concludes that, in terms of indemnity coverage, the earliest policy years triggered by the Anderson and Reed claims are the earliest years that the evidence shows those individuals could have been exposed to Weyerhaeuser's asbestos-containing products. In both cases, that year appears to be 1965. Thus, the Court GRANTS Fireman's Fund's cross-motion and DENIES Weyerhaeuser's cross-motion.

The clerk is directed to send copies of this order to all counsel of record.

Dated this 2nd day of January, 2008.

Marsha J. Pechman
United States District Judge

ORDER — 8