UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WEYERHAEUSER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>FIREMAN'S FUND INSURANCE COMPANY,<br><br>Defendant<br><br>and<br><br>FIREMAN'S FUND INSURANCE COMPANY,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>GENERAL INSURANCE COMPANY OF AMERICA; NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE, WISCONSIN, and OLD REPUBLIC INSURANCE COMPANY,<br><br>Third-Party Defendants. | Case No. C06-1189MJP<br><br>ORDER GRANTING IN PART AND DENYING IN PART WEYERHAEUSER'S MOTION FOR ATTORNEYS' FEES AND GRANTING IN PART AND DENYING IN PART FIREMAN'S FUND'S CROSS-MOTION RE: ATTORNEYS' FEES |

This matter comes before the Court on cross-motions for summary judgment on the issue of attorneys' fees. (Dkt. Nos. 143 & 145.) Both parties have filed responses. (Dkt. Nos. 153 & 155.) Having considered the motions and responses, all documents in support thereof and the record herein, the Court GRANTS IN PART and DENIES IN PART each of the motions.

ORDER — 1

**Background**

This case arises from twenty-seven claims asserted against Weyerhaeuser Company ("Weyerhaeuser") alleging liability for bodily injury. The claims relate to asbestos exposures that spanned a number of years. Fireman's Fund issued insurance policies to Weyerhaeuser from 1954 to 1978. The policies all provide the same bodily injury coverage — Fireman's Fund agreed to pay on behalf of Weyerhaeuser all sums Weyerhaeuser became obligated to pay for bodily injury damages, sustained by any person and arising out of Weyerhaeuser's business operations. (Dkt. No. 41, Am. Taylor Decl. ¶¶ 4-7.) In the mid-1980's, Weyerhaeuser and Fireman's Fund entered into an informal arrangement whereby Weyerhaeuser assumed control of defense and indemnity payments on all asbestos bodily injury claims. (See Dkt. No. 75, McDougall Decl. ¶ 4.) Under the arrangement, after the claims were resolved, Weyerhaeuser would seek reimbursement from Fireman's Fund for the indemnity payments and defense costs minus deductibles and subject to policy limits. (See id.)

This case was initiated on August 18, 2006, when Weyerhaeuser complained that Fireman's Fund refused to reimburse Weyerhaeuser over $1 million in attorneys' fees and costs for past and current asbestos claims. (Dkt. No. 1, Compl. ¶ 12.) Weyerhaeuser alleged that Fireman's Fund refused to pay unless and until Weyerhaeuser agreed to a defense cost sharing agreement; Weyerhaeuser also alleged that Fireman's Fund refused to pay the full indemnity amounts. (Id. ¶ 13.)

On January 26, 2007, Weyerhaeuser moved for summary judgment on all of its claims. The Court denied the motion and directed the parties to meet and exchange the appropriate documents to complete the file on each claim so that Fireman's Fund could begin reimbursing Weyerhaeuser.[1] (Dkt. No. 64, Order of May 11, 2007.) As the Court explained at oral argument

---

[1] At oral argument, the parties indicated that they had already scheduled a meeting for July 10, 2007, at which they planned to resolve some of the remaining issues on their claims. (Dkt. No. 66, Transcript of May 10, 2007 Oral Argument, at 22-23 &32.) The Court directed the parties to use that meeting to go through each of the remaining claims and to identify remaining legal issues.

ORDER — 2

on that motion (see Transcript of May 10, 2007 Oral Argument) and in its December 18, 2007 Order regarding prejudgment interest, because of their unique arrangement, Fireman's Fund could not reimburse Weyerhaeuser until Fireman's Fund had enough information to actually process the reimbursement requests (Dkt. No. 121, Order of Dec. 18, 2007). The Court explained that Weyerhaeuser needed to provide the following information to obtain reimbursement: (a) for indemnity amounts, Weyerhaeuser needed to provide a request for reimbursement, documentation of the settlement amount paid, and selection of a policy year in which to process the claim; and (b) for defense costs, Weyerhaeuser needed to provide a request for reimbursement, documentation of the defense costs paid, selection of a policy year in which to process the claim, and the underlying indemnity amount. (Id.) Until that information was provided to Fireman's Fund, no reimbursement duties were triggered, and prejudgment interest would not run until the thirty-first day after all such information was provided. (Id.)

Separate from the factual issues involved in documenting Weyerhaeuser's reimbursement claims, the parties disputed some legal issues and sought judicial resolution of those disputes. To that end, the parties brought a series of cross-motions on four legal issues:

(1) whether Fireman's Fund could seek recompense for claims paid from the three other insurers who issued "fronting" policies to Weyerhaeuser during the claims period;

(2) how the policy deductibles relate to defense costs ("ALAE / Deductibles" motions);

(3) whether Weyerhaeuser can require Fireman's Fund to process asbestos liability claims under policies that pre-date any alleged or actual exposure to Weyerhaeuser's asbestos products (i.e., "trigger of coverage / joint and several liability" motions); and

(4) whether Weyerhaeuser is entitled to prejudgment interest.

---

(Id. at 36-37.) On May 24, the parties produced a stipulated plan for their July 10 meeting and for preparations for the meeting. (Dkt. No. 65.) The parties agreed which cases would be discussed at the meeting, how documents would be exchanged to complete the file for each case before the meeting, how post-meeting discovery would proceed, and how post-meeting legal disputes would be resolved through cross-motion summary judgment briefing. (Id.)

ORDER — 3

The Court issued separate orders on all four issues, concluding as follows:

(1) The Court <u>granted</u> Weyerhaeuser's motion and <u>denied</u> Fireman's Fund's motion on the "fronting" policy issue. (Dkt. No. 118.) Because allocation between a regular insurer and a fronting policy insurer is akin to allocation between an insurer and an insured, and because Washington law prohibits that result, the Court concluded that Fireman's Fund may not seek recompense from the three fronting policy insurers in this case.

(2) The Court <u>granted in part</u> and <u>denied in part</u> each of the party's cross-motions on the "deductible" issue. (Dkt. No. 120.) The Court concluded that the policy deductible applies to defense costs when Weyerhaeuser resolves a claim by agreement, but not when a claim is resolved by judgment. The Court also concluded that when Weyerhaeuser settles a claim and the indemnity amount is less than the deductible, Weyerhaeuser is responsible for all of the defense costs associated with that claim. When Weyerhaeuser settles a claim and the indemnity amount is more than the deductible, Weyerhaeuser is responsible for the defense costs incurred on that claim in the same proportion as the deductible bears to the indemnity amount paid to resolve the claim.

(3) The Court <u>granted</u> Fireman's Fund's motion and <u>denied</u> Weyerhaeuser's motion on the "trigger of coverage" issue. (Dkt. No. 124.) The Court concluded that, in terms of indemnity coverage, the earliest policy years triggered by the at-issue claims are the earliest years the evidence shows the individuals could have been exposed to Weyerhaeuser's asbestos-containing products.

(4) The Court <u>granted</u> Fireman's Fund's motion and <u>denied</u> Weyerhaeuser's motion on the issue of prejudgment interest. (Dkt. No. 121.) The Court concluded that prejudgment interest would run, but only from the thirty-first day after Weyerhaeuser provided all of the information necessary for Fireman's Fund to process the reimbursement request until the day Fireman's Fund issued payment. Under the guidelines set by the Court, Weyerhaeuser recovered prejudgment interest on twenty-one of the twenty-seven claims at issue in this litigation. (Dkt. No. 146, Cordell Decl. ¶ 13.) The interest amounted to approximately $45,000, a small percentage of the more than $1.5 million in prejudgment interest Weyerhaeuser originally requested. (<u>See</u> Dkt. No. 156, McDougall Decl. ¶5; Dkt. No. 83, DeVet Decl., Ex. 1.)

Weyerhaeuser now moves for <u>Olympic Steamship</u> attorneys' fees. <u>See Olympic Steamship Co. v. Centennial Ins. Co.</u>, 117 Wn.2d 37 (1991). Acknowledging that it did not prevail on every issue in this case, Weyerhaeuser only seeks a portion of its fees, in the following approximate amounts:

(1) Preparation of initial pleadings, discovery, and related litigation tasks: <u>$174,000</u>

(2) Analysis, briefing, and argument in connection with cross-motions for summary judgment, allocated to issues on which Weyerhaeuser prevailed: <u>$77,000</u>

(3) Fifty percent of the costs of preparing for, conducting, and following up on the

ORDER — 4

1        July 10, 2007 meeting: $69,000

2     (4)    Costs associated with filing the motion for attorneys' fees and opposing Fireman's
             Fund's cross-motion: $14,000

(Dkt. No. 145, Plf's Mot. at 4.) Fireman's Fund opposes any and all attorneys' fees.

## Discussion

### I.    Standard

This issue comes before the Court on cross-motions for summary judgment. A motion for summary judgment should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©).

When deciding whether to award Olympic Steamship attorneys' fees, the Court must consider both whether the prevailing party is entitled to fees and whether the fee request is reasonable. Pub. Util. Dist. No. 1. v. Int'l Ins. Co., 124 Wn.2d 789, 814 (1994).

### II.   Entitlement to Attorneys' Fees

Washington generally follows the "American rule" on attorneys' fees, which provides that parties bear their own costs of litigation, unless fee recovery is permitted by contract, statute, or in equity. Leingang v. Pierce County Med. Bureau, 131 Wn.2d 133, 143 (1997). However, in Olympic Steamship, the Washington Supreme Court held that "[a]n insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees, regardless of whether the duty to defend is at issue." 117 Wn.2d at 54. Fees are recoverable where the insurer forces the insured to litigate questions of coverage, but not where the controversy is only about the amount of a claim. Leingang, 131 Wn.2d at 147; McGreevy v. Or. Mut. Ins. Co., 128 Wn.2d 26, 33 n.4 (1995) (citing Dayton v. Farmers Ins. Group, 124 Wn.2d 277, 280-81 (1994)). Thus, when an insurer unsuccessfully contests coverage, it places its interests above the insured, and equity compels a fee award. McGreevy, 128 Wn.2d at 39-40.

Applying the guidelines set forth in Olympic Steamship and its progeny, the Court will consider each of Weyerhaeuser's fee requests separately.

ORDER — 5

**A.      Preparation of initial pleadings, discovery, and related litigation tasks**

Weyerhaeuser requests over $174,000 in fees associated with pre-suit investigation, compilation of the documents supporting the reimbursement claims, drafting and filing the complaint, and producing discovery documents. Two law firms represent Weyerhaeuser in this action: Perkins Coie and Gordon Tilden Thomas & Cordell. As explained in their motion, Weyerhaeuser has excluded Perkins Coie fees in connection with (1) assisting Weyerhaeuser in submitting documents perfecting the twenty-seven claims, (2) work on the denied January 2007 summary judgment motion, (3) integrating Gordon Tilden into the joint representation of Weyerhaeuser, (4) work on the withdrawn bad faith claim, and (5) calculation of payment amounts or prejudgment interest owed by Fireman's Fund. (Plf's Mot. at 12.) Weyerhaeuser has also voluntarily excluded Gordon Tilden fees associated with: (1) time spent integrating Gordon Tilden into the litigation, (2) assisting Weyerhaeuser in submitting documents perfecting the twenty-seven claims, or (3) calculating payment amounts or prejudgment interest owed by Fireman's Fund. (Id.)

Weyerhaeuser's request for this subset of fees is not well-taken. As the Court has repeatedly explained, because of their unique relationship, Weyerhaeuser had an affirmative obligation to compile, organize, and submit reimbursement requests to its insurer, Fireman's Fund. Fireman's Fund could not reimburse, and could not be expected to reimburse, Weyerhaeuser until it had enough information to process the reimbursement requests. (See Dkt. No. 121, Dec. 18, 2007 Order.) Weyerhaeuser was not "forced to bring a lawsuit to obtain the benefit of [its] bargain with an insurer." See Panorama Vill. Condo. Owners Ass'n Bd. of Directors v. Allstate Ins. Co., 144 Wn.2d 130, 144 (2001). Rather, it needed to document and organize its reimbursements requests and present them in a manageable way to Fireman's Fund. Weyerhaeuser has not presented any evidence to the Court showing that it presented all necessary reimbursement documents to Fireman's Fund on its twenty-seven claims before initiating this litigation. In fact, the parties apparently agree that all necessary reimbursement documentation

ORDER — 6

was not presented to Fireman's Fund until May 2007, five months after Weyerhaeuser filed its lawsuit. (See Dkt. No. 144, McDougall Decl. ¶ 3.) The Court will not award Weyerhaeuser attorneys' fees for time spent during litigation accomplishing tasks that could and should have been accomplished prior to and without the need of judicial action.

Weyerhaeuser suggests that the Fireman's Fund refused to pay on Weyerhaeuser's reimbursement requests until Weyerhaeuser capitulated to Fireman's Fund's interpretation that the fronting insurers were responsible for a portion of the reimbursement. The only evidence Weyerhaeuser cites for this assertion is an e-mail Fireman's Fund sent in response to a reimbursement request on two claims, in which Fireman's Fund indicated that it had received the request and was "still attempting to reach a global agreement with regards to the deductible and Fireman's Fund's percentage of contribution after deductible is reached." (Dkt. No. 86-5, at 20.) This single e-mail does not prove that Fireman's Fund refused payment on all claims absent capitulation on the fronting policy issue. Moreover, two months after that email was sent, Fireman's Fund agreed to pay a portion of the defense costs on a separate claim and stated its belief that the fronting insurers should share a portion of the liability. (Dkt. No. 150, Fewell Decl., Ex. A.) And Fireman's Fund actually made reimbursement payments on many of the claims at issue after Weyerhaeuser submitted all necessary documents but before the Court issued its order on the fronting policy issue. (See Dkt. No. 156, McDougall Decl. ¶ 3.) Thus, it appears that Fireman's Fund did not, as Weyerhaeuser suggests, refuse to make reimbursement payments until the fronting policy issues were resolved.

Weyerhaeuser points out that it was only after the litigation was initiated that Fireman's Fund acknowledged that it must reimburse Weyerhaeuser in full and then seek allocation from the fronting insurers. (Dkt. No. 147, McCullagh Decl. ¶ 5.) But Fireman's Fund's erroneous belief regarding apportionment to the fronting insurers goes to a separate issue — whether Weyerhaeuser deserves fees for work on the summary judgment motion regarding the fronting policies.

ORDER — 7

Weyerhaeuser asks for fees for its pre-suit investigation, compilation of documents supporting reimbursement, drafting of the complaint, and production of discovery. All of these activities could have been minimized or eliminated had Weyerhaeuser properly compiled and forwarded its reimbursement requests. The parties' unique reimbursement relationship required Weyerhaeuser to take steps that the typical insured does not have to take — documenting the claims paid and defense costs incurred, organizing those documents in a manageable fashion, and forwarding them to the insurer with the expectation that a reasonable amount of time will pass before reimbursement is received. The request for this set of attorneys' fees is DENIED.

**B.  Work preparing for, conducting, and following up on the July 10, 2007 meeting**

For the same reasons that <u>Olympic Steamship</u> fees are not warranted for the pre-suit investigation, compilation of documents supporting reimbursement, drafting of the complaint, and production of discovery, they are not warranted for participating in the July 10 meeting. This meeting was arranged, in large part, to give the parties an opportunity to work through each claim individually and determine the amount of reimbursement owed. Such a meeting should have occurred <u>before</u> any litigation commenced, and it is not clear from the papers filed that Fireman's Fund would have opposed any such meeting prior to the litigation. The request for these fees is DENIED.

**C.  Summary Judgment Motions**

Weyerhaeuser seeks fees associated with those cross-motions on which it prevailed, in whole or in part.

**i.  Fronting Policy Motions**

Weyerhaeuser prevailed on the issue of whether Fireman's Fund could allocate some of the reimbursement amounts to Weyerhaeuser's fronting insurers and Weyerhaeuser now moves for 100% of the fees allocable to its briefing on this issue. Its request includes fees incurred by Nicoll Black & Feig PLLC, the firm that represented the fronting insurers and filed a response to

ORDER — 8

1   Fireman's Fund's motion for reconsideration of the Court's order on this issue. Fireman's Fund
2   opposes the request, arguing that these motions did not raise coverage issues.
3       <u>Olympic Steamship</u> fees are recoverable where the insurer forces the insured to litigate
4   questions of coverage, but not where the controversy is only about the amount of a claim.
5   <u>Leingang</u>, 131 Wn.2d at 147; <u>Dayton v. Farmers Ins. Group</u>, 124 Wn.2d 277, 280 (1994)
6   (holding that insured is not entitled to <u>Olympic Steamship</u> fees incurred in uninsured motorist
7   arbitration proceeding to determine damages). "Coverage disputes include both cases in which
8   the issue of any coverage is disputed and cases in which 'the extent of the benefit provided by an
9   insurance contract' is at issue." <u>Leingang</u>, 131 Wn.2d at 147 (quoting <u>McGreevy</u>, 128 Wn.2d at
10  33)). Thus, even when an insurer admits coverage, but unsuccessfully disputes the scope of the
11  coverage, attorneys' fees are warranted. <u>Id.</u> In <u>Leingang</u>, the defendant insurer admitted coverage
12  and paid the indemnity amount in full, but maintained that it was entitled to be reimbursed the
13  amount paid to the plaintiff by his uninsured motorist carrier. <u>Id.</u> at 144–45. The court held that
14  the issue of whether or not an exclusion in the defendant's policy authorized reimbursement was a
15  coverage dispute and awarded fees. <u>Id.</u> at 147; <u>see also</u> <u>McGreevy</u>, 128 Wn.2d at 29, 39-40
16  (affirming award of attorneys' fees in dispute over whether uninsured motorist benefits could be
17  stacked to apply to one covered event). The situation here is materially indistinguishable from
18  that in <u>Leingang</u> — Fireman's Fund has admitted that it owes "all sums" under its policies, but
19  sought authorization from the Court to seek reimbursement from the third-party insurers for their
20  portion of the liability. But under the clear terms of Weyerhaeuser's side agreements with those
21  other insurers, any amounts found owing by those insurers would have to be paid by
22  Weyerhaeuser. As the Court explained in its order on the fronting policy issue, Weyerhaeuser
23  was effectively self-insured under the three fronting policies: "[t]he effect of these "side
24  agreements" — or, as Weyerhaeuser calls them, "fronting policies" — is that Weyerhaeuser, not
25  its insurer, actually pays for all losses under the policies." (Dkt. No. 118, Order at 3.) Because
26  their fronting policy dispute went to the scope of the coverage Fireman's Fund would provide,
27

ORDER — 9

rather than the amount of the underlying damages, Weyerhaeuser is entitled to the attorneys' fees incurred litigating this issue.

Fireman's Fund also suggests that Olympic Steamship fees are not warranted because this set of cross-motions raised novel and unique issues of Washington law. But Fireman's Fund has not cited and the Court is not aware of any legal authority for the proposition that Olympic Steamship fees should not be awarded where an insured must litigate against its insurer on a unique coverage issue to obtain the benefit of its contract. Weyerhaeuser's request for fees related to its attorneys' work on the fronting policy cross-motions is GRANTED.

### ii. ALAE / Deductible Motions

Weyerhaeuser seeks fees for half of the expenses attributable to the ALAE/Deductibles cross-motions in light of the fact that it prevailed on one of the two issues presented in those motions. The Court ruled in Weyerhaeuser's favor that a deductible does not apply to defense costs when a claim is resolved by judgment. The Court ruled in Fireman's Fund's favor that when Weyerhaeuser settles a claim and the indemnity amount is less than the deductible, Weyerhaeuser is responsible for all of the defense costs. If the settled indemnity amount is more than the deductible, Weyerhaeuser is responsible for the defense costs in the same proportion that the deductible bears to the indemnity amount paid to resolve the claim. (Dkt. No. 120.) Because Weyerhaeuser prevailed on half of the issues presented in these cross-motions, and because it was forced to litigate these issues to receive the full benefit of its insurance contract, the Court GRANTS Weyerhaeuser the fees requested regarding these motions.

### iii. Trigger of Coverage / Joint & Several Liability Motions

Weyerhaeuser did not prevail on this set of cross-motions and does not seek any fees associated with them.

### iv. Prejudgment Interest Motions

Although the Court granted Fireman's Fund's motion and denied Weyerhaeuser's cross-motion regarding prejudgment interest, Weyerhaeuser still seeks thirty-three percent of the fees

ORDER — 10

allocable to these motions. Weyerhaeuser does not seek fees for work having to do with its withdrawn reply brief on its prejudgment interest motion or work involved with applying the Court's order to calculate prejudgment interest. (Plf's Mot. at 14.) In its motion, Fireman's Fund opposed any prejudgment interest on the grounds that the principal amounts remained unliquidated until Weyerhaeuser properly presented its reimbursement requests. (Dkt. No. 76.) Weyerhaeuser sought prejudgment interest on all twenty-seven of its claims running from the date it provided Fireman's Fund with notice of the amounts owed, and an order establishing the rules that govern prejudgment interest and setting the amount of prejudgment interest owed. (Dkt. No. 78.) In its order, the Court ruled that prejudgment interest would run, but only from the thirty-first day after Weyerhaeuser provided all of the information necessary for Fireman's Fund to process the reimbursement request. (See Dkt. No. 121.) Based on the Court's ruling, the parties determined that Fireman's Fund owed prejudgment interest on at least twenty-one of the twenty-seven claims. (Dkt. No. 146, Cordell Decl. ¶ 13.) Because Weyerhaeuser did benefit from litigating this issue, and because it needed to litigate this issue to obtain the benefit of its contract, the Court GRANTS Weyerhaeuser's request for thirty-three percent of its fees allocable to these motions.

### D. Attorneys' Fees Cross-Motions

Because Weyerhaeuser has prevailed in obtaining an award of some of its attorneys' fees, the Court GRANTS Weyerhaeuser's request to be reimbursed for one hundred percent of its costs incurred in bringing its attorneys' fees motion and opposing Fireman's Fund's cross-motion.

## III. Reasonableness of Fee Request

Washington courts use the "lodestar method" to determine whether a fee request is reasonable. McGreevy v. Or. Mut. Ins. Co., 90 Wn. App. 283, 291 (1998), overruled on other grounds by Panorama, 144 Wn.2d at 144. "The lodestar award is arrived at by multiplying a reasonable hourly rate by the number of hours reasonably expended on the matter." Id. (quoting Scott Fetzer Co. v. Weeks, 122 Wn.2d 141, 149 (1993)). As explained in McGreevy:

ORDER — 11

> The first step is to look at the number of hours expended. The second step is to determine if the hourly fee charged was reasonable — the third step is to multiply the two to reach the lodestar fee. Finally, [a]fter calculating a lodestar fee, the court should consider whether it needs adjustment either upward or downward to reflect factors not already taken into consideration.

Id. (internal quotation marks omitted).

In terms of the number of hours expended, a court should segregate time spent on successful claims from hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time. Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597 (1983). As explained above, the Court has limited the number of hours for which Weyerhaeuser will receive reimbursement for its attorneys' fees. The Court has limited the award to exclude hours spent on unsuccessful issues and on matters that, under the parties' unique relationship, should have been executed and resolved outside this litigation. As required, see McGreevy, 90 Wn. App. at 292, Weyerhaeuser's attorneys have provided reasonable documentation of the work performed, including the number of hours worked, they type of work performed, and identification of the attorney or non-lawyer performing the work. (Dkt. No. 146, Cordell Decl., Ex. A.)

In terms of the hourly fee, "[w]hen attorneys have an established rate for billing clients, that rate will likely be a reasonable rate." Id. at 293. "The court is not bound, however, by the attorney's usual fee and may consider the level of skill required by the litigation, time limits imposed by the litigation, the amount of the potential recovery, the attorney's reputation, and the undesirability of the case." Id. Weyerhaeuser's attorneys and paralegals have charged their customary billing rates to represent Weyerhaeuser in this case. (Cordell Decl. ¶ 17; McCullagh Decl. ¶ 17 (including institutional discount and other fee reductions for Weyerhaeuser).) Fireman's Fund does not object to the rates proposed by Weyerhaeuser's attorneys and the Court sees no reason to deviate from the rates requested by Plaintiff's attorneys.

The Court will not calculate the lodestar amount based on the materials currently filed. The parties are directed to meet and confer and prepare a proposed order awarding fees that is consistent with this order. If the parties are unable to reach agreement on the proposed order,

ORDER — 12

they may offer a single proposed order that includes each parties' suggested fee award.

**Conclusion**

Under <u>Olympic Steamship</u>, Weyerhaeuser is entitled to some of its fees in bringing this action because it was required to litigate certain legal issues to obtain the benefit of its insurance contract with Fireman's Fund. But many of the fees incurred could have been avoided had Weyerhaeuser properly organized and presented its reimbursement requests. The Court has therefore limited the fee award. The parties are directed to present the Court with a proposed order awarding fees within <u>two weeks</u> of this order.

The clerk is directed to send copies of this order to all counsel of record.

Dated this 12th day of May, 2008.

/s/ Marsha J. Pechman
Marsha J. Pechman
United States District Judge

ORDER — 13